Good morning, Your Honors. May it please the Court, Brian Cousid, Venable LLP, on behalf of the Defendant Appellant, Lands' End, Inc. I'd like to reserve three minutes for rebuttal and I'll keep track of the time on my end. Thank you.  There's no dispute in this case that a contract was formed between Mr. Plata, the plaintiff, and Lands' End, Inc. on November 16, 2022, when he purchased goods from Lands' End's website. That's page 327 of the record, paragraph 110 of the complaint, which asserts, among other things, a breach of contract claim against Lands' End. So the only issue is, what were the terms of the contract that was entered into on November 16, 2022, and specifically, whether those terms included Lands' End's online terms of use. That, as I'm sure the Court is aware, is governed— But what do we do with the broken link? Sure. Great question, Your Honor. So I think that—a couple of thoughts on that. First, as I think we noted in our briefs, there's no case law that really addresses this specific issue. And I think that the record is clear in terms of the evidence on this issue, and the question is simply a legal question of what is the proper standard to employ in dealing with this kind of situation. The record shows that in March of 2023 and thereafter, there's evidence that the link— if you clicked on the link that's directly below the Place Order button, it would go to the Help Center webpage for Lands' End and not directly to the terms of use identified there. But there's no direct evidence that that occurred as of the date of purchase or immediately surrounding the date of purchase, which was four and a half months earlier in November of 2022. I think the problem with the District Court's analysis and why it was clearly erroneous is that the standard that the District Court basically adopted— Wait, wait. Are you saying that—are you saying something that's different than what you said below? Because I thought that below, there wasn't really a dispute that the link was, in fact, broken. I mean, it wasn't a dead link, but it took you to the homepage, and then eventually if you can figure out the terms of service, I think by typing it in or something like that. But it was a broken link in the sense that it didn't direct the user to the terms of service page. Is that a dispute now? No, and I apologize if I was unclear, Your Honor. Let me try to clarify further. I think the record is clear that as of March 28, 2023, and thereafter, if you clicked on the link that's below the Place Order button on Land's End's checkout page, it would go to the Help Center. I think you're referring to an argument that was made below, which we are not making on appeal, that if you got directed to the Help Center, you could also type in terms of use on the Help Center. And I think the word you used just now was ferret out the link, which I know is in some of the case law as well. We're not making that argument on appeal. I think the issue with the district court's decision with respect to this misdirecting hyperlink is that it's not tied closely enough. The evidence that it misdirected is not tied closely enough to the date of purchase. And if you think about it in the context of this class action, I think it kind of illustrates the point. Because this is a class action where the claims in the putative class goes back to June, July of 2020. So, and this has not been addressed yet below, obviously, but I think it illustrates the problem with the district court's standard if you don't tie this evidence closely to the date of purchase, is that you have a situation where we believe the notice that Land's End provides on its website is sufficient under this court's precedent to bind a consumer under an inquiry notice standard. So assuming that that's right, a contract would have been formed in July of 2020, say, if a consumer bought goods on Land's End's website at that time. But we're saying that evidence that the link misdirected in March of 2023 into 2024 somehow undermines or invalidates what would otherwise have been contract formation at the time of July of 2020. That's not a workable standard in our view. I think that if you think about it in terms of this has not really been addressed in the case law. I'm not aware of any case that deals with this specific facts. But as I was trying to prepare for this argument and think about what would be a workable standard for working through these issues, I think a workable standard would be a presumption that a link works, which I think is pretty consistent with how the inquiry notice standard has been applied in the courts, including this court's precedent, which can be rebutted. But I think the evidence to rebut that presumption needs to be tied much closer to the date of purchase than this, which is about a 130-day gap between Mr. Plata's purchase in November of 2022 and when there's evidence that the link misdirected starting in March of 2023. Is there evidence for how long it misdirected? There is evidence that I believe my friend Mr. Doble's firm put in below that it misdirected for a significant period of time. And I think that when our witnesses were asked about that, they described, I think it's pages 124 and 125 of the record, that they design, write the source code, test the websites, and make sure it's working, and then it goes live. And until they have counter evidence to believe that there's a problem, they assume it's still working. I guess I'm thinking about your presumption argument, which makes some sense in terms of let's presume it works until we know it doesn't. But you made the argument that the timing is too far removed. Well, that would make sense if it came up that it wasn't working and then a couple days later it was fixed. But that's not the facts here. So why would we be so concerned about this 120-day gap or 130-day gap or whatever you said it was? Well, I think the reason for the concern, Your Honor, from a policy standpoint at least is, and this goes back to the California Court of Appeals decision in Sellers and the other case law in this sign and wrap agreement context, is that the contract is formed when you click the button and make your purchase online. That gets to a different question that I have is what do we make of the fact that we know in this record that this plaintiff never clicked the link? So does it even matter? So that's a great question, Your Honor, and this again is why, as I've been preparing for this argument and going through the briefs again thinking through these issues further, I think that's why you need to have a standard along the lines of the one that I have outlined, and that's because if a consumer doesn't click on the link, and as is the case in this record, the data logs don't show an error with the link, and there were no complaints on or around the time of the data purchase in November of 2022, it's hard to see how a website provider could prove effectively a hypothetical, right, that a consumer who never clicked on a link on the date of purchase, if they had clicked on the link on that date of purchase, the link would have worked. So that's why I think having some sort of rebuttable presumption is the way to address this kind of an issue, which again I'm not aware of it coming up, so I appreciate that you're writing on a blank slate here in terms of trying to figure out what works. But I think there's a couple of issues here, and part of it had to do with the way that this was litigated, because the way that I read the record, and feel free to point out where I'm missing the analysis, but the way I read the record is that because there was really no dispute, really a concession, that the link in fact misdirected at the time, the district court made that factual finding. So then the question is if we find that the district court did in fact make a factual finding that it was a broken link, then it becomes I think closer to legal questions you articulated, which is can you manifest assent to something that really didn't exist. So it's kind of like I think of it as a two-step analysis, and now I know you're fighting pretty hard today against the notion that the district court made a finding, but as I read the record, there was a concession that the website misdirected, and so the district court made that finding, and I think it was well supported. So you're on appeal, and we reviewed those findings for clear error. Yes, Your Honor. I'm sorry, were you done with your question, Your Honor? Yes. Okay. So a couple of points to address what you've raised. I don't think there was any concession below that the link was not working on the date of purchase. We acknowledge below that the link was not working as of the end of March 2023, and thereafter. That's undisputed, no dispute on that at all. I know there was some argument in the brief about that we conceded that this link below the place order button wasn't at issue in the case and kind of removed it from the case. I don't think that that's correct. I direct the court's attention to pages 20, 24, and 25 of the oral argument transcript in the record, as well as the district court's decision itself, which didn't say we conceded this, but went through and decided the issue along the lines of what you noted, Your Honor. And I think what the district court said is there's evidence that on March 28, 2023 and forwards, the link was misdirecting, and there was no evidence of a change in the link between November of 2022 and March of 2023, and therefore the court found it must not have been working on the date of purchase in November of 2022. And we're not disputing that that's the factual finding that the district court made, but I think it's clearly erroneous because it's wrong as a legal matter because it's not a workable standard to allow a 130-day gap or a 200- or 300- or 400-day gap between evidence of a misdirecting link and the date of purchase effectively invalidate contract formation after the fact. That doesn't make sense. Whose burden is it to show that it was working on the date of purchase? I don't believe that that specific issue has ever been addressed in terms of who has the burden of proving this kind of a hypothetical, but I would expect that it would be our burden because it's our burden to show that there's an arbitration agreement by a preponderance of the evidence, Your Honor. And I think we've met that burden with the evidence that was put forward because the evidence that was put forward shows that there was a—that the data logs as of the date of purchase were— there were no errors or error messages, and there were no other evidence, complaints from consumers or anything else that would lead us to believe there was a problem. And in fact, even though I understand, you know, that the record shows starting in March of 2023 the link was misdirecting, we were not made aware of that until much later, and then at that point obviously took steps to fix it. I see I'm out of time, so I'll reserve my time for rebuttal. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Gabriel Doble for the Apolli Juan Plata. I'd like to start with the broken hyperlink because that presents a straightforward, clean way to resolve this appeal. To answer your question, Judge Nguyen, of who bears the burden of proof, it's the defendant. The party seeking to enforce the arbitration provision bears the burden of proof by preponderance of the evidence that an agreement was formed. And the district court found below that Lansden failed to meet that burden. That's a factual finding that's reviewed for clear error. And here on appeal, Lansden has come nowhere close to showing clear error, and that's true for several reasons. The first is that they conceded below that they have no idea whether the hyperlink was working back in November 2022. And on page 52 of our brief, we cite four concessions from them in the district court that they don't know whether the link was working. Those concessions were correct. So that's kind of – I mean, this is a little bit of a tough case because that's kind of always going to be true in some sense because, you know, these cases turn on – there's stuff that has to be met, but ultimately nobody clicks on these things. And so it's a sort of constructive consent issue. So you're rarely going to have any evidence of whether a hyperlink is working on a given day. And usually – but usually that's not an issue because there's no evidence that the hyperlink wasn't working on some other day, right? And that's what makes this case different. So what – I guess what I'm a little bit concerned about is I think the burden probably is on them, but to tell – but to say that they have to prove affirmatively, maybe not in this case, but generally that the hyperlink is working seems to really – that's probably an unprovable thing, as your colleague on our side mentioned. In the ordinary case. So what do we – what kind of rule could we have? How should a court look at this? You know, this case is different because there's a link that wasn't working for – at some other time. But is it that once there is some evidence that a link isn't working at some other time, then they have to show that it was working? And if that's the rule, then how much time? I mean, if it's seven years later, I mean, it shouldn't – you see what I'm saying? Well, it's a preponderance standard, Your Honor. So they don't have to show beyond a reasonable doubt that the hyperlink was working on November 16th, 2012. But let's say there was no evidence that the hyperlink wasn't working. That seems to be the big – then what would they have to show in that kind of case? Well, what usually happens in these cases and what happened here is that they'll submit an employee declaration stating that at the time of the purchase, the hyperlink – This is how we set up the hyperlink. It went to this page. Correct. Exactly. So there's some employee declaration stating that's the case. And most of the time, that's enough. But if they had a – and they didn't have a declaration like that in this case at all, or did they? I believe they did have a declaration like that in the district court. So now you have conflicting evidence that you got some employee saying that at the time it went here, but is it six weeks later, I think? I'm trying to remember. It's about four months later. Four months later that it's not – there's evidence that it's not working. So, I mean, you could say they met their burden, right, because they said it was working at the time and the fact that it wasn't working four months later. I'm just struggling with what the standard will be. Well, like when any district court is faced with a preponderance standard, the court weighs the evidence on both sides and makes a ruling as to whether the party with the burden of proof has met that burden. And so most of the time, an employee declaration will be enough to satisfy preponderance. Because it's kind of unrebutted.  And so that's why I'm guessing that here it is unrebutted. If the declaration says that it's working at this time and the fact that it's not working four months later, there's a sense in which the declaration is unrebutted because they're talking about different time frames. Well, it's not unrebutted, Your Honor, because there's evidence that it was broken four months later. Four months later. They don't dispute that. There's also evidence that there were no changes to the hyperlink between the time of the purchase and the time it was confirmed broken. That's in their interrogatory responses and it's in their deposition. So that is compelling evidence that the hyperlink was not, in fact, working at the time of the purchase. So that's what bridges the gap. Correct. In your view. And I would add also that discovery revealed that employee declaration to be baseless. We deposed the employee who made that declaration that the hyperlink was working and he conceded that he had no personal knowledge of that fact. And your view is that the fact that there weren't complaints about the hyperlink not working, et cetera, because nobody clicks on these things anyway and so why would you have complaints? Because it could be broken and nobody knows because nobody's clicking on them. Well, we asked the deposition whether there were any complaints in 2023 or 2024 when the hyperlink was confirmed to be broken for over a year and there were no complaints during that time either. There were no complaints at any time until May 2024 when counsel for my client notified the defendants that the hyperlink wasn't working. I want to shift gears a little bit from the factual question to a legal question. We are in constructive notice, constructive, I guess notice is the right word, and we have two requirements, reasonable conspicuousness and then a manifestation of assent. This broken hyperlink situation, which box does that go in? The first box, Your Honor. Reasonable conspicuousness? Correct, because it's not just reasonable conspicuousness that there are terms, it's reasonable conspicuousness of what those terms are. A consumer cannot be bound to terms if they don't know and they can't find out what those terms are. Is there any cases that talk about reasonable conspicuousness at the – I mean, I know there's no cases about a broken hyperlink, but I'm just trying to figure out if there are other – so say you click the link and you got to the page that has the terms and the terms were all in minuscule font that you couldn't hardly read. Do we have any cases like that that say we talk about reasonable conspicuousness at that level? Because my recollection is that all of our reasonable conspicuous cases talk about before you get to the link or, like, even if the link is conspicuous. I'd point the court to Sellers and specifically the discussion at the end of the opinion in Sellers from the California Court of Appeal where the court addresses the hyperlink in the mobile screen and that hyperlink linked to a page that did not contain the terms of use. It contained disclaimers and it contained additional hyperlinks in the disclaimers that sent the user to the terms of use. So the user clicked the link in the notice, they were sent to a separate web page, and then they had to click another hyperlink to get to the terms of use. And the California Court of Appeal said that's not conspicuous enough because consumers cannot be expected to ferret out the terms. Well, I think the district court analyzed this more under the manifestation of assent aspect. So in your view, that was wrong. It should have been in the other part of the analysis. Forgive me if I'm wrong, Your Honor. I believe the district court found that also went to reasonable conspicuousness, and that's how we briefed it. I believe that's the case, but I could be wrong about that, and I apologize. I think the district court also had, and you're probably right that it's a little bit of both. It was a little unclear to me. But the district court also talks about we can't have a manifestation of assent if you were to click the link for the terms and they aren't there. And I've been trying to wrestle with that argument. One, do you agree with that sort of line of reasoning? If they click the link and they aren't there. The terms aren't there. So you can't have agreement to terms when the place where you're supposed to go get the terms, they aren't actually there. I agree with that, yes. So what do we do in a case where we know? I mean, as Judge Van Dyck has pointed out, we can assume most of the time nobody ever looks at this. But in this case, we know they didn't look at it.  That fact is legally irrelevant to this case, and Lansden conceded. That fact is? Is legally irrelevant to this case. The fact that Mr. Plata didn't click on the link. And Lansden conceded that it's illegally irrelevant at oral argument below at pages 26 to 27 of the record. Wouldn't we review that at De Novo? If it's legally relevant or not? You would review it at De Novo, but they conceded the fact, and a concession in the district court is binding on them. I'm not sure that a party can concede a legal fact or a legal proposition. You can concede facts. Fair enough. They at least conceded that they weren't aware of any case law that this mattered. And it doesn't matter because the reasonable conspicuousness inquiry is one based on an objective reasonableness standard, not whether any individual sees a notice or clicks on a link. Right. Well, I guess I think that's right. And so then it makes sense that you're saying that the broken hyperlink issue really should be analyzed under the conspicuous aspect and not under the manifestation of assent aspect. I think it's a little bit of both, but I think it mostly goes to reasonable conspicuousness because the terms themselves need to be conspicuous. Consumers can't be expected to ferret them out. And I'd also note that this fits more generally with inquiry notice under California law in which a person is only charged with knowledge of facts that a reasonable inquiry would reveal. And here the inquiry that Land's End says Mr. Plata should have taken is to click on the hyperlink. But that inquiry would not have revealed the presence of the arbitration provision because the web page didn't have the terms of use. It didn't have the arbitration provision. I'd be happy to answer any other questions on the broken hyperlink issue. Otherwise, I would like to turn briefly to the conspicuousness of the notice itself in case the court does decide to reach that issue. Can I go back to the manifestation of assent prong again? Because that requires that the consumer be explicitly advised. Did you make an argument that a broken link fails the explicit advisement test or analysis? We did not. We focused our argument on the reasonable conspicuous prong. But I think that I agree with Your Honor that it does also play into the objective manifestation of intent, the unambiguous manifestation of intent. And, of course, this court can affirm on any ground that's apparent in the record. Turning to the notice itself and the conspicuousness of that notice, I'll begin with the observation that this is a messy area of law. Each web page is different. It's a fact-intensive inquiry. And as the California Court of Appeal observed in Sellers, it involves inherently subjective views about what's more or less conspicuous and who the reasonably prudent consumer on the Internet is. And so the best thing we can do for companies trying to figure out how to design their web pages is provide some measure of predictability by ruling the same way when the same factors are present. And here, as discussed in the briefing, there are several factors present in this case that have led this court and other courts to conclude that notices are insufficiently conspicuous. And one I'd like to highlight is intervening elements between the action button and the notice. And this played a heavy role in the court's decisions in Chabola and Godin, both of which had something in between the action button that the user had to click and the notice alerting them to the terms. By contrast, if you look at all of the cases of Land's End sites in this brief, all those screenshots where the court found notices to be sufficient, in each of those cases the notice was directly above or directly below the relevant action button with no intervening elements. Here, there are intervening elements. There's text that says, secure checkout, learn more. That text is bolded and is set apart with a lock button, so it's actually more prominent than the notice itself. That's one factor where this court should rule consistently with its prior cases. Another is that the only indication of the hyperlink is underlining. And in Berman and in Sellers, this court and the California Court of Appeal, respectively, very clearly held that underlining alone is insufficient to alert consumers to the presence of a hyperlink. And on page 30 of our brief, we compare the design of the notice in this case to the design of the notice in Berman, and they are indistinguishable. So again, that's another reason, another similarity between this case and the cases where this court has held notices insufficient in a contrast to the cases where this court has held notices were sufficient. The last two factors I'll mention, the notice was in the smallest font on a busy page, much busier, I think, than the cases, lands, and sites, and even busier than the cases where this court has held notices insufficient. And finally, it was only on the last page of a three-stage checkout process, which is unlike the notice in Oberstein, where this court found it relevant that the notice appeared on each of the three pages of checkout. I'd be happy to answer any questions the court has about the broken hyperlink, about the sufficiency of the notice, about waiver, or about unconscionability. Otherwise, I would just rest on the briefs and ask this court to affirm the district court. Thank you, counsel. I just want to hit on a few points, Your Honors. On the notice itself, I think if this court looks at the prior decision in Patrick, which was a similar consumer transaction for apparel with a final checkout screen and a clear, uncluttered screen and was deemed to be sufficient, we think this notice here is every bit as clear and conspicuous as the one in Patrick, and the advisal here is much more explicit than the one that was at issue in Patrick. And I'd further note that under sellers, part of the context of the transaction analysis looks at the claims that are at issue. The claims here are about Lands End's pricing, directly tied to the purchase itself. The claims in Patrick, it was a data breach class action, far more attenuated between the purchases that gave rise to the arbitration agreement and the underlying claims. This court still found arbitration was enforceable, and we think that that is probably the closest and most analogous of this court's precedent to this case. My colleague, Mr. Doble, referenced the Chabala and Godin decisions. I don't think those are really on point here. Godin is an auto renewal law case. The language that he's referring to that was in between the action button and the notice of the terms is mandatory language required under California's auto renewal law. That's not at issue here. And in Chabala, similarly, most of the decision was really about the assent issue that, Judge Wynn, you talked about in your questioning, in the sense that it wasn't clear to the consumer what they were signing up for fully, and that was really what drove the decision in Chabala. That's not at issue here, and we don't think there's really any meaningful dispute that the advisal is sufficient for an unambiguous manifestation of assent here. Going back to the hyperlink issue, there was some discussion about a concession in the oral argument transcript, pages 26 and 27. I think if you look at that in the record, it's not a concession to the extent that Mr. Doble is saying. It's acknowledging that there's no case law on this. There's nothing specific that addresses this kind of hypothetical where a consumer who didn't click on the link, and then there's evidence later on that the link wasn't working properly, and how do you prove the hypothetical that if the consumer had clicked on the link, it would have worked on the date of purchase? I think it's a difficult and gets into some... What about their point that there was no changes? You haven't pointed to any evidence of anything changed between the date and when we have some evidence that the link wasn't working? I see that I'm over, Your Honor. I'm just going to answer the question if that's okay. It is correct that the evidence in the record shows there was no material changes to the pathway, the design of the website. If you look at pages 122, 124, 25, 164, and 65 of the record, that kind of shows what is in the evidence about this, but I think the larger answer to your question, Judge Van Dyke, is if we're going to have proof of this kind of hypothetical required, it has to be a workable standard, and given that there are thousands of customers coming to the website each day and placing orders and entering into contracts, we think any standard needs to be much more closely tied to the date of purchase than the 130 days here because otherwise then you're basically going back in time to invalidate what would otherwise be binding contracts. If there are no further questions, thank you for your time. All right. Thank you to both sides for your argument this morning. The matter is submitted.
judges: NGUYEN, FORREST, VANDYKE